UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JACK OLTMAN, et al.,<br><br>               Plaintiffs,<br><br>    v.<br><br>HOLLAND AMERICA LINE – USA, INC., et al.,<br><br>               Defendants. | CASE NO. C05-1408JLR<br><br>ORDER |

## I. INTRODUCTION

This matter comes before the court on Defendants' motion for summary judgment (Dkt. # 13). The court has considered the parties' briefing and supporting evidence, and has heard from the parties at oral argument. For the reasons stated below, the court GRANTS Defendants' motion in part and DENIES it in part.

## II. BACKGROUND

On March 31, 2004, Plaintiffs Jack Oltman and his mother Bernice Oltman ("the Oltmans") embarked on a seventeen-day cruise from Valparaiso, Chile to San Diego, California. Defendants Holland America Line, Inc, and Holland America Line – USA, Inc. (collectively, "Holland America") operated the cruise. The Oltmans purchased their cruise tickets shortly before departing for a business trip to Chile, and received their

ORDER – 1

travel documents as late as the time they boarded their cruise in Chile.[1]  At some point before arriving in San Diego on April 17, 2004, the Oltmans fell sick when a gastrointestinal illness broke out among the passengers.

On March 31, 2005, the Oltmans filed a complaint against Holland America in King County Superior Court, alleging that Holland America's negligence led to their illness.  They also alleged negligent infliction of emotional distress, breach of contract, and fraudulent misrepresentation.  Plaintiff Susan Oltman, Mr. Oltman's wife, brought a loss of consortium claim.  Yates Decl., Ex. C.  Holland America moved to dismiss the state court action based on a forum selection clause in the Cruise and Cruisetour Contract ("cruise contract") that was included in the Oltmans' travel documents.  On August 12, 2005, the state court granted Holland America's motion, dismissing Plaintiffs' claims with prejudice because a forum-selection clause in the cruise contract required Plaintiffs to bring their lawsuit in this court.  Yates Decl., Ex. A.  Plaintiffs filed their complaint in this court on the same day.

Holland America claims that this action is untimely because the cruise contract specifies a one-year limitations period for commencing a lawsuit based on injuries suffered on the cruise.  Lundgren Decl., Ex. A at 16.  Plaintiffs contend, however, that the one-year limitations period is invalid under contract law principles, or in the alternative that this action is timely because it is a continuation of their timely state court action.  They also contend that, regardless of the one-year limitations period, Susan Oltman can bring her loss of consortium claim because she was not a party to the cruise contract.

---

[1]The Oltmans are not certain when they received their travel documents, J. Oltman Decl. ¶ 11, but construing the facts in the light most favorable to them, the court will assume for the purposes of this order that they received them upon boarding the ship.  The court acknowledges that Defendants offered several reasons for charging the Oltmans with earlier notice of the terms of their cruise contract, but the court need not reach that dispute.

ORDER – 2

### III.  ANALYSIS

In reviewing a summary judgment motion, the court must draw all inferences from the evidence in the light most favorable to the non-moving party. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, the opposing party must show that there is a genuine issue of fact for trial.  Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The opposing party must present significant and probative evidence to support its claim or defense.  Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).  For purely legal questions, summary judgment is appropriate without deference to either party.

**A.  The one-year limitations period in the cruise contract bars the Oltmans' claims.**

Defendants claim that the cruise contract's one-year limitations period bars Jack and Bernice Oltman's claims for negligence, breach of contract, negligent infliction of emotional distress, and fraud.  Plaintiffs argue that the limitations period is invalid.  They contend that because the clause was written in small print and contained within a thirty-page booklet, the clause was not reasonably communicated to them.  They also contend that because they received the travel documents at the time they embarked on the cruise, they did not have reasonable notice of the contract terms.

**1.  The cruise contract reasonably communicates the one-year limitation.**

A limitations period in a cruise ship passenger contract is valid so long as it is "reasonably communicated."  Dempsey v. Norwegian Cruise Line, 972 F.2d 998, 999

ORDER – 3

(9th Cir. 1992). Whether the contract provides reasonable notice of the limitations period is a question of law, id., for which the Ninth Circuit employs a two-pronged analysis. Wallis v. Princess Cruises, Inc., 306 F.3d 827, 835-36 (9th Cir. 2002) (citing Deiro v. Am. Airlines, Inc., 816 F.2d 1360 (9th Cir. 1987)). First, the court looks at the physical characteristics of the ticket, such as the "size of type, conspicuousness and clarity of notice on the face of the ticket, and the ease with which a passenger can read the provisions in question." Wallis, 306 F.3d at 836 (citations omitted). Courts have consistently enforced limitations clauses where the limitation was explicitly stated in the cruise contract. See id. at 839 (listing cases in which courts upheld express limitations clauses in cruise line ticket contracts). Second, the court looks at "the circumstances surrounding the passenger's purchase and subsequent retention of the ticket/contract." Id. at 836 (citations omitted). Such circumstances include the passenger's familiarity with the ticket, the time and incentive under the circumstances to study the ticket, and any other notice the passenger received. Dempsey, 972 F.2d at 999.

The terms and conditions in the cruise contract are sufficiently conspicuous to pass the first prong of the test. The Oltmans received a booklet of travel documents when they embarked on their cruise. Lundgren Decl. ¶ 3, Ex. A.[2] The Table of Contents for the booklet lists four items: "Arrival Advice," "Itinerary," "Contract (Please Read)," and "Cancellation Information." Lundgren Decl., Ex. A at 5. The cruise contract begins on page 13 of the booklet. Id. at 15. The word "CONTRACT" appears in large, boldface letters in the right margin of the page. Id. Under the label "Cruise Ticket," the page specifies the passengers' names, their cabin number, and the time and place of departure

---

[2] The court notes that the travel documents to which Holland America cites are not the Oltmans' actual documents. Plaintiffs do not dispute, however, that these documents are identical to the ones governing their cruise.

ORDER – 4

and arrival. Id. at 15. The following page, labeled "Cruise and Cruisetour Contract," repeats this information. Both pages include this notice directly below the cabin number:

> ISSUED SUBJECT TO THE TERMS AND CONDITIONS ON THIS PAGE AND THE FOLLOWING PAGES. READ TERMS AND CONDITIONS CAREFULLY.

Id. On the next page, under the heading "IMPORTANT NOTICE TO PASSENGERS," the cruise contract states that the document is a legally binding contract. Id. at 17. In large capital letters, the second paragraph directs passengers to specific clauses of the contract "which contain important limitations on [their] right to assert claims against [Holland America]," including Clause A.3. Id. The forum selection clause that the state court enforced in Plaintiffs' prior action also appears on this page. Two pages later, Clause A.3 states that passengers may not maintain a lawsuit for personal injury unless they commence the lawsuit within one year after the injury, or for other suits, after the end of the cruise. Id. at 19. While the type is small, it is readable, and the clause explicitly states the limitation. The contract thus passes the first prong of the "reasonably communicated" test.[3]

  As to the second prong of the "reasonably communicated" test, the circumstances surrounding the Oltmans' receipt and retention of their tickets show that Holland America reasonably communicated the one-year provision. Plaintiffs claim that because they did not receive the contract until departure, they did not have enough time to read it thoroughly and fully understand their rights, nor did they have an opportunity to reject the terms if they found them unacceptable. While the Oltmans may have received the ticket as late as the time they boarded the ship, they did not buy their tickets until close to the

---

[3] The court notes that this District has repeatedly enforced Holland America's cruise contracts. See Wyler v. Holland America Line–USA, Inc., No. C02-109P, 2002 WL 32098495, at *2 (W.D. Wash. Nov. 8, 2002) (listing cases upholding Defendants' contract).

ORDER – 5

date of their departure for their business trip. J. Oltman Decl. ¶ 3. Any time constraint, therefore, was of their own making. Regardless, the Oltmans need not have actually read the contract before boarding in order for the limitations period to be enforceable. The Oltmans present no evidence showing that Holland America took their travel documents away or otherwise prevented them from reading the cruise contract either after the cruise began or after they fell ill. Instead, the evidence shows that the Oltmans retained their travel documents and had the opportunity to read them and understand the one-year limitation after they fell sick. Compare Ward v. Cross Sound Ferry, 273 F.3d 520, 526 (2d Cir. 2001) (finding insufficient notice of a limitations provision where a ferry line collected tickets containing the provision just minutes after giving them to passengers.) Thus, the cruise contract satisfies the second prong of the "reasonably communicated" test.

**2.     The one-year limitation period is fundamentally fair**.

A provision limiting the rights of a cruise ship ticketholder must also pass judicial scrutiny for fundamental fairness. Dempsey, 972 F.2d at 999 (citing Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991)). Courts focus their inquiry on whether the provision was intended to discourage passengers from pursuing legitimate claims, whether the cruise line gained agreement to the clause through fraud, and whether there was reasonable notice of the limitation. Shute, 499 U.S. at 595.

Plaintiffs argue that because they filed their state court action within the one-year limitations period, it would be fundamentally unfair to apply the limitation to bar the current action. This is not the focus of fundamental fairness inquiry. Plaintiffs do not allege that Defendants used fraud to induce them to agree to this clause, nor do they allege that Defendants included the limitation in order to discourage passengers from bringing claims. It is reasonable for a cruise line to expect passengers who are injured

ORDER – 6

while on a cruise to inspect their tickets with the aid of an attorney to determine their rights. Passengers can protect their rights by filing suit within one year of their injuries and in the forum specified in the contract. Dempsey, 972 F.2d at 1000. Moreover, because Congress has indicated that vessels may contractually provide for a one-year limitation on filing suit, id. at 999 (interpreting 46 U.S.C. § 183b), Plaintiffs are hard put to argue that it is unfair for a cruise line to do so. Finally, the court has already concluded that the contract provided reasonable notice of the limitation.

Plaintiffs' related claim that the one-year limitations period is unconscionable as a contract of adhesion under Washington law also fails. Plaintiffs base their substantive unconscionability argument on Adler v. Fred Lind Manor, 103 P.3d 773, 786-88 (Wash. 2004), in which the Washington State Supreme Court found a collective bargaining agreement's 180-day limitation for filing employment discrimination claims to be against public policy because it limited the remedies available to the employee. They further claim that the contract is procedurally unconscionable because the Oltmans could not bargain around the term. These claims fail on multiple grounds. First, a cruise line passage contract is a maritime contract governed by federal maritime law. Wallis, 306 F.3d at 834. Therefore, even if the cases Plaintiffs cite were relevant to passenger contracts, Washington contract law does not apply. Second, as the court has already noted, Congress has indicated that cruise operators may legally shorten the general three-year statute of limitations for maritime torts to one year. Dempsey, 972 F.2d at 1000. Finally, the Supreme Court has rejected the assumption that a provision in a form passage contract is unenforceable per se because it was not the subject of bargaining. Shute, 499 U.S. at 593.

Plaintiffs assert that even if the one-year limitations period is valid, their claims survive. They argue that because they filed their federal complaint on the same day their

ORDER – 7

state court case was dismissed, the current action is a "continuation" of their original action. Plaintiffs are mistaken. This action is not a "continuation" of a previous lawsuit. It is a new lawsuit, and under the unambiguous terms of the contract, it is not timely. Clause A.3 of the contract states that passengers "may not maintain a lawsuit against [Holland America] . . . unless . . . the lawsuit is commenced not later than one (1) year after the day of death or injury . . .". Lundgren Decl., Ex. A at 19. The Oltmans' injuries occurred no later than April 17, 2004, the last day of their cruise. Because they filed their complaint in this court more than a year later, the contractual limitations period bars their claims.[4]

### 3. Plaintiffs cannot support a claim for fraudulent inducement.

The record does not support Plaintiffs' claim for fraudulent inducement. First, Plaintiffs' claim for fraudulent inducement may fall under the one-year limitations period in the contract, in which case their claim is time-barred. Even if the one-year limitations period does not apply, Plaintiffs' claim fails on the merits. Fraudulent inducement of a maritime contract is state law claim. J. Lauritzen A/S v. Dashwood Shipping, Ltd., 65 F.3d 139, 142-43 (9th Cir. 1995) (citing Kuehne & Nagel v. Geosource, Inc., 874 F.2d 283, 288 (5th Cir. 1989) (holding that where the misrepresentations by the defendant to induce the plaintiffs into signing the contract occurred on land, admiralty jurisdiction was not appropriate)). Thus, the court will look to either Washington law, as specified in the choice of laws provision in the contract, Lundgren Decl., Ex. A at 25-26, or California law, as the location where Plaintiffs entered into the contract. Under either body of law,

---

[4] Because the court finds that the limitations clause bars Plaintiffs' claims, it does not reach Defendants' collateral estoppel arguments. The court also finds no merit in Plaintiffs' assertion that Defendants' statement in state court that Plaintiffs could re-file in this court creates an estoppel barring enforcement of the limitations period.

ORDER – 8

a plaintiff claiming fraudulent inducement must prove, among other things, that the defendant knew of the falsity of the representations he or she made to the plaintiff, and that he or she intended for those representations or omissions to induce the plaintiff's reliance. See Webster v. L. Romano Engineering Corp., 34 P.2d 428, 430 (Wash. 1934); Garamendi v. Golden Eagle Ins. Co., 27 Cal.Rptr.3d 239, 253 (Cal. App. Ct. 2005).

Plaintiffs rest their fraudulent inducement claim on these allegations: that Holland America's brochures and advertising represented that they provide safe and enjoyable cruises, and that Holland America failed to disclose in their sales materials that there had been past outbreaks of gastrointestinal illness on their ships. With respect to the affirmative representations that the Oltmans would have a safe and enjoyable cruise, there is no evidence from which a jury could conclude that Holland America knew that the Oltmans' cruise would not be safe and enjoyable or that they knew that there would be an outbreak of illness during the cruise. Similarly, with respect to Holland America's failure to disclose past outbreaks[5], Plaintiffs provide no evidence from which a jury could conclude that Holland America knew that nondisclosure would induce the Oltmans' reliance.

**B.   The one-year limitation does not apply to Susan Oltman's claim for loss of consortium.**

Finally, the court turns to Susan Oltman's loss of consortium claim. The one-year limitations period does not apply to this claim, because she was not a party to her husband's cruise contract. Defendants rely on Miller v. Lykes Bros. S.S. Co., 467 F.2d 464, 466-67 (5th Cir. 1972) for the proposition that a loss of consortium claim is subject

---

[5]The court notes that there is no evidence that Holland America made affirmative attempts to conceal past outbreaks aboard its ships. Indeed, Plaintiffs themselves point out that information about such outbreaks is readily available over the Internet. J. Oltman Decl., Attach. 4.

ORDER – 9

to the same contractual limit as the injured party's claim. In <u>Miller</u>, however, as in other cases that Defendants cite, both the injured party and the spouse claiming loss of consortium were passengers and were therefore subject to the same cruise contract.[6] Susan Oltman, by contrast, was not a passenger with her husband.

Turning to the merits of Susan Oltman's claim, the court notes that it is viable only under narrow circumstances. Maritime law recognizes a cause of action for loss of consortium only if the spouse's injury occurred in state territorial waters. <u>Am. Export Lines, Inc. v. Alvez</u>, 446 U.S. 274, 276 (1980); <u>see also</u> <u>Sutton v. Earles</u>, 26 F.3d 903, 914-15 (9th Cir. 1994); <u>see also</u> <u>Chan v. Soc'y Expeditions</u>, 39 F.3d 1398, 1407-08 (9th Cir. 1994) (holding that there is no loss of consortium claim where the injury occurred outside state territorial waters). Within state territorial waters, state law governs a loss of consortium claim. <u>See</u> <u>Yamaha Motor Corp., U.S.A. v. Calhoun</u>, 516 U.S. 199, 202 (1996) (holding that where no federal maritime statute exists, state law remedies apply for injuries to non-seamen in territorial waters); <u>Flores v. Am. Seafood Co.</u>, 335 F.3d 904, 916-917 (9th Cir. 2003) (outlining federal maritime choice-of-law principles.) Taking the facts in the light most favorable to Plaintiffs, then, it is possible (if unlikely) that Jack Oltman could have fallen ill during the period of time when the cruise ship sailed in California waters before docking in San Diego. If Susan Oltman can prove as much, she can succeed on her loss of consortium claim.

---

[6]Defendants cite <u>Silware v. Holland-America Line Westours, Inc.</u>, Nos. C97-963C, 97-1556C, 1998 WL 834326 (W.D. Wash. Jan. 6, 1988), to support their assertion that the contractual limitation applies to Susan Oltman even though she was not a party to the cruise contract. The court notes that it is not clear whether the family members bringing consortium claims in <u>Silware</u> were parties to a cruise contract. Even if they were not, the <u>Silware</u> court's sole citation of authority was to <u>Miller</u>, <u>supra</u>, a case in which both the injured spouse and the spouse claiming loss of consortium were passengers bound by the same cruise contract.

ORDER – 10

Lastly, the court finds no merit in Defendants' assertion that the cruise contract's one-year limitation would nevertheless bar Susan's action because her injury is derivative of her husband's personal injury claim. While Susan must prove Jack's injury to prevail, both of the states whose laws might apply to her claim recognize loss of consortium as a cause of action independent of the underlying injury to the spouse. Milde v. Leigh, 28 N.W.2d 530, 537 (N.D. 1947) (holding that while the statute of limitations barred wife's claim against her doctor for injury resulting from a botched sterilization, husband could still claim loss of consortium because he did not experience loss until she got pregnant two years after her surgery); Lantis v. Condon, 157 Cal.Rptr. 22, 24 (Cal. Ct. App. 1979) (holding that because loss of consortium is not a derivative cause of action, wife's award would not be reduced for husband's contributory negligence in causing his injury).[7]

Lastly, the court finds no merit in Defendants' assertion that the cruise contract's one-year limitation would nevertheless bar Susan's action because her injury is derivative of her husband's personal injury claim. While Susan must prove Jack's injury to prevail, both of the states whose laws might apply to her claim recognize loss of consortium as a cause of action independent of the underlying injury to the spouse. Milde v. Leigh, 28 N.W.2d 530, 537 (N.D. 1947) (holding that while the statute of limitations barred wife's claim against her doctor for injury resulting from a botched sterilization, husband could still claim loss of consortium because he did not experience loss until she got pregnant two years after her surgery); Lantis v. Condon, 157 Cal.Rptr. 22, 24 (Cal. Ct. App. 1979) (holding that because loss of consortium is not a derivative cause of action, wife's award would not be reduced for husband's contributory negligence in causing his injury).[7]

## IV. CONCLUSION

For the reasons stated above, the court GRANTS in part and DENIES in part Defendants' motion for summary judgment (Dkt. # 13).

Dated this 1st day of August, 2006.

_____
JAMES L. ROBART
United States District Judge

---

[7] Despite Plaintiffs' citation to Washington law, the court finds no basis for applying Washington law to Susan Oltman's loss of consortium claim. As neither party has offered a choice-of-laws analysis, the court declines to do so. It merely notes that as Mrs. Oltman is not a party to the cruise contract, its choice of law clause does not bind her. Susan and Jack Oltman reside either in California or North Dakota, and any relevant injury occurred either in California or North Dakota. Thus, either California or North Dakota law applies.